FILED

Jan 14  11 32 AM '04

U.S. DISTRICT COURT
NEW HAVEN, CONN.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

ROBERT L. FUDA,                          CIVIL ACTION

    Plaintiff                            No:  3:02CV01678 (RNC)

VS.

METRO-NORTH RAILROAD COMPANY,            January 13, 2004
CONSOLIDATED RAIL CORPORATION,
AND  AMERICAN FINANCIAL GROUP,
INC., F/K/A AMERICAN PREMIER
UNDERWRITERS, INC., F/K/A PENN
CENTRAL CORPORATION


    Defendants
_____X

### PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL THE "CONRAIL DEFENDANTS"

    The plaintiffs moved to compel discovery responses in the first three groups of hearing loss cases.  The Conrail Defendants ("Defendants") mistakenly assume the plaintiffs also moved to compel in the fourth group of hearing loss cases because the plaintiffs inadvertently provided the Court with a motion to compel and memorandum with a caption containing all four groups of hearing loss cases.  The plaintiffs did not send discovery requests in the fourth group of hearing loss cases until December 15, 2003.  The plaintiffs sent their discovery requests in the third group of hearing loss cases on April 29, 2003, but mistakenly assumed at the time the instant motions to compel were filed that the Defendants had filed their boilerplate objections.  Since the

**FELA HEARING LOSS CASES –
MAY BE FILED IN NEW HAVEN AS
ORDERED BY MAGISTRATE
JUDGE MARGOLIS.**

Defendants have not yet responded to the plaintiffs' discovery dated April 29, 2003, the plaintiffs withdraw their motions to compel with respect to the third group of hearing loss cases.

The Defendants assert "[t]he plaintiffs' statement that all the defendants' responses are the same is untrue, and by providing only the Fuda discovery responses the plaintiffs have improperly mislead the Court." Def.'s Mem. p. 3. The plaintiffs did not mislead the Court. The plaintiffs stated the discovery responses appear to be the same and, upon further review, the plaintiffs maintain and adhere to their prior representation that all the Defendants' discovery responses appear to be the same.

The Defendants improperly claim their expert's opinion that noise exposure prior to 1982 could not cause the plaintiffs' hearing loss is a basis for denying discovery of information before 1982. Dr. Kirchner submitted expert reports in the Compo and Walz cases, (attached hereto at App. A). The plaintiffs' expert opines that their work on the railroad, including work prior to 1983 contributed to their hearing loss. Conflicting opinions about the impact of pre-1982 noise exposure is not a proper grounds to deny clearly relevant discovery.[4]

"In the Second Circuit, an employer breaches its duty under the FELA 'if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees.'" Williams v. Long Island RR Co., 196 F.3d 402, 406 (2nd Cir. 1999) (citing Ulfik v. Metro-North Commuter Railroad, 77 F.3d. 54, 58 (2nd Cir. 1996)).

---

[4] In the Compo and Walz cases, expert reports were prepared prior to the hearing loss scheduling order entered by the Court this past summer.

The plaintiffs seek information to help prove the Defendants failed to act reasonably to inform and protect the plaintiffs from exposure to loud noises. See Eggert v. Norfolk & Western Railway Co., 538 F.2d 509, 512 (2nd Cir. 1976) (holding the trial court erred in preventing the plaintiff from offering evidence of what other railroads' practices were with respect to the alleged negligent conduct of the defendants). The Second Circuit held that evidence of practices of other railroads with respect to the allegations of negligence against the defendant railroads is "highly relevant since the existence of alternatives would be significant on the issue of whether defendants acted reasonably in the present case." Id. In the instant hearing loss cases, the plaintiffs do not seek discovery about practices of other railroads with respect to hearing conservation measures. The plaintiffs seek documents and interrogatory answers concerning the Defendants' hearing conservation program, including all noise level testing at the Defendants' work locations and around their equipment. A significant reason such discovery should not be limited to specifically what the Defendants did with respect to the individual plaintiffs or the exact machinery or specific locations at which they worked is because proof of steps and efforts made with respect to other employees' equipment or work locations is highly relevant as to whether the Defendants acted reasonably with respect to any efforts they made to provide the plaintiffs with a safe place to work. See Eggert, supra.

The importance of allowing discovery beyond the plaintiffs' specific work locations is demonstrated by Defendants' response to a request to admit. The plaintiffs requested the Defendants admit that "Conrail conducted noise surveys of Maintenance

of Way Equipment between 1976 and 1984 in addition to what is set forth in App. A" that was attached to the requests to admit.[5]   Conrail admitted that noise surveys of Maintenance of Way equipment occurred on two other occasions during this time period, but has failed to produce those noise surveys even though most of the equipment the plaintiffs worked with and around was Maintenance of Way equipment. See App. B, Defendants' response to a request to admit.   It can hardly be said that noise surveys of equipment performed in Ohio, or anywhere else, is of no relevance to the noise levels of similar equipment around which most plaintiffs worked in Connecticut or New York.

The Defendants claim discovery should be limited because the plaintiffs' damages are "minimal."  The Defendants smugly suggest a diminished ability to hear and to communicate with other people is no big deal.  Yet, according to railroad documents, there have been numerous jury verdicts in occupational hearing loss cases between $50,000 and $250,000.  See App. C.  The Court should not punish those plaintiffs who have made reasonable settlement demands by limiting the scope of their discovery on this basis.

The Defendants' objections should be overruled on the discovery requests at issue.  This is made abundantly clear by their failure to produce a single document in these hearing loss cases to date other than portions of some plaintiffs' railroad medical and personnel files.[6]  Their failure to produce documents pertaining to their own hearing

---

[5] Appendix A to the plaintiffs' request to admit contained a noise survey of Conrail's Maintenance of Way Equipment that was conducted in 1979 and the document was not produced by the Defendants.

[6] It is interesting that the defendants would not even agree to withdraw their objections to requests seeking these records.

conservation program and noise surveys demonstrates a lack of good faith. Defendants' objections should be overruled so that it is clear they are under a continuing duty to produce responsive documents.

For the foregoing reasons, the plaintiffs request that the Court overrule the Defendants' objections and compel interrogatory answers and production of responsive documents by a date certain.


Respectfully submitted,
FOR THE PLAINTIFF,


By _____
    Scott E. Perry (ct17236)
    CAHILL & GOETSCH, P.C.
    43 Trumbull Street
    New Haven, Connecticut 06511
    (203) 777-1000

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this 13th day of January, 2004, to Anthony D. Sutton, Esq., Ryan, Ryan, Johnson & Deluca, LLP, 80 Fourth Street, P.O. Box 3057, Stamford, Connecticut  06905; and to Lori A. McCarthy, Esq., Flynn & Associates, P.C., 189 State Street, 6th Floor, Boston, Massachusetts 02109.

_____
Scott E. Perry

# *APPENDIX A*

## J. CAMERON KIRCHNER, M.D.

EAR, NOSE AND THROAT

MEDICINE AND SURGERY

TEMPLE MEDICAL CENTER
40 TEMPLE STREET
NEW HAVEN, CONNECTICUT  06510
TELEPHONE (203) 787-2114
FAX (203) 787-2051

GUILFORD GLEN
5 DURHAM ROAD (RT.77)
GUILFORD, CONNECTICUT  06437
TELEPHONE (203) 453-0618

June 20, 2003

George Cahill, Esq.
43 Trumbull Street
New Haven, CT  06510

RE:    Samuel Compo
DOB:  9/27/57

Dear Attorney Cahill:

Samuel Compo was seen on July 9, 2002 for otologic evaluation.  Based on his complaints, medical history, the history of noise exposure while working for the railroad for the past twenty six years, his physical examination and audiological results, it is my opinion to a reasonable degree of medical certainty that occupational noise has contributed to his hearing loss.

The association between noise exposure and hearing loss has been extensively documented in the medical literature for over fifty years.  This information has also been brought specifically to the attention of the railroad industry.  For example, as early as 1966, Dr. Aram Glorig discussed the subject in a presentation to the Medical and Surgical Officers of the Association of American Railroads.

Sincerely,

J. Cameron Kirchner, M.D.

JCK/dp

J. CAMERON KIRCHNER, M.D.

EAR, NOSE AND THROAT

MEDICINE AND SURGERY

TEMPLE MEDICAL CENTER
40 TEMPLE STREET
NEW HAVEN, CONNECTICUT 06510
TELEPHONE (203) 787-2114
FAX (203) 787-2051

GUILFORD GLEN
5 DURHAM ROAD (RT.77)
GUILFORD, CONNECTICUT 06437
TELEPHONE (203) 453-0618

May 13, 2003

George Cahill, Esq.
43 Trumbull Street
New Haven, CT 06510

RE:    Joseph Walz
DOB: 1/16/49

Dear Attorney Cahill:

Joseph Walz was seen for otologic evaluation on November 5, 2002. Based on his complaints, medical history, the history of noise exposure while working for the railroad for the past thirty two years, his physical examination and audiological test results, it is my opinion to a reasonable degree of medical certainty that occupational noise has contributed to his hearing loss.

The association between noise exposure and hearing loss has been extensively documented in the medical literature for over fifty years. This information has also been brought specifically to the attention of the railroad industry. For example, as early as 1966, Dr. Aram Glorig discussed the subject in a presentation to the Medical and Surgical Officers of the Association of American Railroads.

Sincerely,

J. Cameron Kirchner, M.D.

JCK/dp

# *APPENDIX  B*

**PLAINTIFFS' REQUEST TO ADMIT NO. 8:**

Conrail conducted noise surveys of Maintenance of Way equipment between 1976 and 1984 in addition to what is set forth in Appendix A.

**CONRAIL'S RESPONSE NO. 8:**

Objection. Conrail objects to Plaintiffs' Request to Admit No. 8 on the grounds that the same is not relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent that the same is not limited to the time, work location or craft of the plaintiffs' employment with Conrail. Conrail objects to any inquiry regarding a facility other than the plaintiffs' workplace(s) as being overly broad and unduly burdensome. Conrail further objects to this Request on the grounds that it is unreasonably cumulative and that the burden and expense of obtaining the information sought outweighs its likely benefit. By way of further response and without waiving any objections, in the interests of full disclosure, after a reasonable search, Conrail avers that during the relevant time period of the plaintiffs' employment, noise surveys of Maintenance of Way equipment occurred at the Canton MW Shop and at the Ashtabula Coal Dock located in Ohio, and none of the plaintiffs were employed by Conrail at these locations. Accordingly, Conrail does not concede that these surveys are relevant to the above-captioned plaintiffs' cases. As discovery is ongoing, Conrail reserves the right to supplement/amend this Response prior to trial.

# APPENDIX C

# MEMORANDUM



**Metro-North
Commuter
Railroad**

*Encl*

DATE:    May 19, 1988

TO:      W.J. Fish, Director, Legal Claims, W.E. Zullig, General Counsel,

FROM:    H.W. Herbert, Deputy General Counsel

RE:      J.A. Baum, Deputy Director, Legal-Claims

         Presentation by Stanley Frazee, Assoc. General Counsel, Conrail -- Ad Hoc
         Committee AAR May 18, 1988

Mr. Frezee advises that the asbestos related FELA cases are down to a small
level and there are very few new FELA cases being presented. His committee is
presently involved in handling large volume of hearing loss claims and they
anticipate that the hearing loss claims will become more costly to the
railroads and in greater numbers. Conrail presently has 4,000 claims and
lawsuits of hearing loss claims brought by the law firm of Brobyn and Forceno.

The ICG Railroad recently settled 340 hearing loss claims and since these
settlements they now have received 1,000 new cases. The ICG had previously
tried six hearing loss cases and were hit with settlement verdicts of $50,000
to $250,000.

Plaintiff's Attorney, John Curran currently had 100 hearing loss cases out of
the Reading Shop, PA. Nine of these cases were picked by the Federal Court,
Philadelphia, PA. as test cases to be tried before     Arbitratation Panel of
attorneys with a $75,000 cap and it was understood that decisions of the
Arbitration Panel are not binding and that these cases still could be tried
before the court. The cases were tried with one case per day in which
plaintiff presented video tape testimony from hearing specialist and defense
used live testimony from Dr. Joseph Sateloff, Hearing Expert Philadelphia, PA.
In all 9 cases the Arbitration Panel found for the plaintiff. They did not
accept the argument that hearing loss develops due to increased age or noise
factors outside the employment. If the work place where plaintiff is employed
has or had high noise levels, this was sufficient to find in favor of the
plaintiff. Of the nine cases tried before this Arbitration Panel, two of the
employees are presently employed and testified that their supervisors refused
to permit them to wear any form of hearing protection while at work. Mr.
Frazee advises that Conrail has a policy that all employees working in an area
of high noise levels must be provided with hearing protection but in checking
with one of their repair shops they learn that supervision refused to let
employees work with hearing protection..

Conrail is now conducting hearing noise test of all of their shop crafts and
their hearing loss claims and lawsuits have doubled from 1986/1988. Many of
the claims are presented by retired employees but the statute of limitations
does not begin to toll until three years from the date they first became aware
of their hearing loss.

Mr. Frazee advises their Ad Hoc Committee members consist of in-house counsel from the following railroads: CSX, MKT, Amtrak, UP, SP, ICG, Conrail and also from outside counsel who defend hearing loss cases. This committee is working on defense tactics and settlement strategies and hopefully all of the railroads will work together to set up general policy in handling the large amount of hearing loss claims and lawsuits. Another unfortunate factor concerns active employees who receive settlement of a hearing loss claim, as these employees could then bring a second claim several years later if they are still working in a noise environment and have additional hearing loss.

Mr. Frazee advises that he would like to have additional support on his Ad Hoc Committee from in-house counsel of other major railroads and during my brief discussion with Mr. Frazee, he did mention he would be happy to work with Deputy General Counsel, H.W. Herbert.

JAB:jc
cc: PLW, HCH, ECR, RTR, LMC, LAM

4919/2